## HEBRON BANK *v.* LEWIS.

[72 South. 225.]

LOGS AND LOGGING. *Sale of timber land. Persons liable.*

Where by agreement between the vendor and purchaser of timber land the deed to the same was made to defendant bank, there being an agreement between the purchaser and the bank that the deed was to be held as a mortgage to secure advances, and the timber was immediately turned over to the purchaser, the bank taking no part in the cutting of the timber and having no interest in the proceeds or profits of the purchaser. In such case the vendor had no right of action against the bank for timber erroneously cut, on the ground of a mutual mistake in the deed as to the amount of timber conveyed, made between the vendor and the purchaser and of which the bank had no actual knowledge.

APPEAL from the chancery court of Copiah county.
HON. P. Z. JONES, Chancellor.

Suit by Tom Lewis against the Hebron Bank. From a decree for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Fred M. Bush,* for appellant.

*H. J. Wilson,* for appellee.

STEVENS, J., delivered the opinion of the court.

The record discloses the following state of facts: Tom Lewis, appellee and complainant in the the court below, was the owner of a certain tract of land in Copiah county upon which there was merchantable standing timber. The bulk of this timber seems to have been owned by the estate of H. B. Mayes, deceased; and one J. S. Decell, the administrator and attorney in fact for this estate, in conjunction with Tom Lewis, offered to sell the timber to one W. J. Boatman, sawmill operator, who owned and operated a mill at Rockport

near the timber in question. Boatman negotiated for the purchase of the timber, and agreed with Decell and Lewis upon the price, and consummated the trade. When it came to executing a written conveyance for the timber, Boatman requested the grantors to let the deed run in favor of Hebron Bank, appellant herein, doing a regular banking business at New Hebron, Miss., and requested that a sight draft be drawn upon appellant, and the deed forwarded to New Hebron with sight draft attached. In pursuance of this request the grantors signed and acknowledged a deed conveying the timber to appellant, drew the sight draft and deposited it with the Merchants' & Planters' Bank at Hazlehurst, Miss., with instructions to collect the draft in due course of business and deliver the deed upon payment of the draft. The action of Boatman in requesting the deed to be made out to appellant as grantee is explained by the testimony in the case. It appears that Boatman did his banking business with appellant, and that appellant furnished him with all funds needed in operating his sawmill and in buying additional timber from which to manufacture lumber. It is shown by the uncontradicted testimony offered on behalf of the bank that the deed was made in favor of the bank, as security for moneys advanced by the bank to Boatman to buy the timber in question. The cashier testifies that his institution could not lawfully take a deed of trust upon timber being cut and manufactured into lumber through the operation of the sawmill, and that, instead of taking a trust deed, the officials of his bank preferred to have an absolute deed, intended as a mortgage to secure advances made to Boatman. The undisputed proof shows that Boatman gave his notes to the bank for the money advanced to buy the timber, and that the only understanding which the bank had with Boatman was the general understanding that when Boatman manufactured and shipped a car of lumber, he would turn the invoice and bill of lading over to

.the bank for collection, and the bank would collect the proceeds, and the bank, in the language of the cashier, "deducted from the proceeds a sufficient amount to cover what we paid out for the timber he bought." The testimony of the cashier is uncontradicted to the effect that Boatman "was acting for himself;" that "he bought it for his own use and made the deeds in the name of the bank;" that "the title was made in the name of the bank, that we might be able to show some form of security for our money;" that "the bank had nothing to do with the operation of Boatman's mill, and took no part in the cutting of the timber, and had no equity or interest in the proceeds or profits of the business." The bank, in other words, was simply financing Boatman, and Boatman was operating his own sawmill business at his own expense and on his own account.

After the timber deed was executed and delivered to the bank, Boatman took possession of the timber, and began to cut it and manufacture it into lumber at his sawmill. It then developed that Tom Lewis, the complainant in the court below, claimed that there was a mistake in the deed, and that a few acres of timber particularly described in the bill were intended to be reserved as the individual property of the complainant, and that by mutual mistake the proper reservation was not made in the deed. The complainant claims to have made objections to appellant cutting the timber, and the testimony on this point is in dispute. After Boatman had cut and removed the timber, which the negro man, Tom Lewis, claims to have been reserved, the latter then filed the bill of complaint in this case against the Hebron Bank, seeking to reform the timber deed and to recover a personal decree for the value of the timber so cut and removed. There is evidence tending to prove the clear understanding between Decell, as attorney in fact for the Mayes estate and the complainant, whereby the complainant was to have

reserved the timber in question, and there is also evidence tending to show that Boatman had knowledge of this understanding. There is evidence, therefore, that perhaps justifies the conclusion by the chancellor that a mutual mistake existed. As between Boatman and the complainant, the issue would have been a simple one, but the bill in this case is directed against the bank and not Boatman, and the question presented, then, is whether the bank can be held liable for the value of the timber erroneously cut and removed. Under the circumstances detailed the chancellor granted the relief prayed for in the bill, and awarded the complainant a personal decree against the bank for the full value of the timber sued for.

We do not think the decree of the learned chancellor can be justified either upon the law or the facts. It affirmatively appears from the whole record that Boatman negotiated for and purchased this timber for his own account, and that the bank had no actual knowledge of the exact agreement which the vendors of the timber had with Boatman. The first knowledge the bank had of the transaction was when the deed was presented with the sight draft attached. The bank then paid the draft and held the deed as security for the money they advanced to Boatman in buying the timber. Even if appellant could be said ever to have had possession of the timber, it immediately delivered the timber to Boatman, regarding and treating him as the real purchaser, and permitting him to cut the timber in his own operations and on his own responsibility. As a matter of fact, the bank had no actual knowledge of the mistake in the deed and no complaint was ever made to the banking establishment until after the timber was cut and removed. This suit, of course, arises in a court of equity, and, looking through all forms to the substance, as between the bank and Boatman, the latter was the real purchaser of the timber, and the bank was a mere mortgagee.

But whether the bank be purchaser or mortgagee, the timber, by a lawful understanding between the bank and Boatman, was turned over to the latter as his individual property, and dealt with by Boatman as his own, and was cut and removed by Boatman without any solicitation or active encouragement on the part of the bank. The bank in no wise participated in the conversion of the timber. It derived no profit or benefit from the transaction whatever. It is true that the bank loaned the money to Boatman, and in taking his notes it collected lawful interest on the money advanced. This, however, is not sufficient to convict the bank of an unlawful conversion of appellee's timber, especially when none of the officials of the bank ever had any knowledge of the mutual mistake complained of, and when no complaint was made by appellee to the bank about the timber being cut until long after the standing trees had been converted into lumber through the individual operations of W. J. Boatman. The wrong party is sued; the action should have been directed against Boatman, and not the bank.

The decree of the lower court must be reversed, and decree rendered here in favor of appellant, dismissing appellee's bill.

*Reversed and decree here for appellant.*